**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **AURA VALDEZ-PAYAN,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | **1-25-CV-01285-ADA-ML** |
| **PNC BANK, NATIONAL** | § | |
| **ASSOCIATION** | § | |
| | § | |
| ***Defendant.*** | § | |

**DEFENDANT PNC BANK, NATIONAL ASSOCIATION'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant PNC Bank, N.A. ("PNC") moves for summary judgment as to the claims asserted by Plaintiff Aura Valdez-Payan ("Plaintiff") pursuant to Federal Rule of Civil Procedure 56 and would respectfully show as follows:

## I. INTRODUCTION

Plaintiff, in severe default on her mortgage obligations, attempts to thwart foreclosure on real property located at 2009 Rinker Ranch Drive, Austin, Texas 78725 (the "Property") by arguing PNC did not properly handle an attempted reinstatement in 2024. Specifically, Plaintiff needed to pay $19,116.87 to reinstate her loan; but only paid $16,782.09, which was $2,334.74 less than the amount due. Plaintiff insisted that PNC's calculations were wrong in determining the reinstatement amount, but basic arithmetic (and the Note and Deed of Trust) supports PNC's calculations, and as a result Plaintiff's case should be dismissed.

Despite admitting that she failed to tender the full reinstatement amount, Plaintiff filed her Verified Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (the "Petition") in the 419th Judicial District Court in Travis County on April 28, 2025. Pet. (Doc.1-1). After removal, Plaintiff filed her Amended Complaint, once again admitting she

failed to tender a complete reinstatement, and asserting claims against PNC for breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Federal Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Texas Debt Collection Act[1] ("TDCA"). In addition to monetary damages, Plaintiff seeks declaratory and injunctive relief barring PNC from exercising its right of foreclosure under the Note and Deed of Trust.

Plaintiff's claims fail as a matter of law and should be dismissed with prejudice, as Plaintiff's admitted prior material breach of the Loan documents prevents her from recovering for any breach of contract claim as a matter of law. Regardless, PNC's application of her short payment in October 2024 was contractually proper. PNC is not a debt collector, thereby precluding Plaintiff's FDCPA claims. Plaintiff's TDCA claim fails because PNC's actions did not violate the TDCA as a matter of law, and she has not suffered any damages. Plaintiff's FCRA claim fails because Plaintiff's admitted breach of the Note and Mortgage negates her claim that PNC has committed even a procedural violation of the statute and, even if a procedural violation could be shown (which it cannot), Plaintiff cannot demonstrate damages or injury as required under the statute. Lastly, Texas courts are abundantly clear the DTPA does not apply to loan transactions. Because all Plaintiff's claims fail as a matter of law, summary judgment in PNC's favor is warranted and this case should be dismissed.

## II. UNDISPUTED FACTS

### A. Plaintiff obtained a mortgage in 2019, but repeatedly defaulted on her loan.

---

[1] Plaintiff's Amended Complaint uses the codified section of the TDCA, Tex. Fin. Code § 392.304(a)(8).

On or about March 25, 2019, Plaintiff and her co-borrower, Martha Huizar[2] executed and delivered a Note in the principal sum of $234,685.00 to PNC's predecessor in interest, Compass Bank (the "Note").[3] As security for the Note, Plaintiff, her then partner, Jesus Martinez,[4] and Plaintiff's co-borrower executed a Deed of Trust which was recorded in the official public records of Travis County, Texas on March 26, 2019 as document number 2019041942 (the "Deed of Trust").[5] The Note and Deed of Trust are collectively referred to herein as the "Loan." Beginning as early as September 2021, Plaintiff became delinquent on her loan due to failure to make complete and timely payments.[6] Due to Plaintiff's failure to make her payments, PNC began to send default notices and loss mitigation correspondence to Plaintiff's mailing address.[7] Plaintiff's default continued through the end of 2021 and into 2022, with multiple attempted payments being returned due to insufficient funds in Plaintiff's bank account.[8] However, in 2022, Plaintiff caught up on her payments on her loan, only to fall back into default in 2023.[9]

Plaintiff's 2023 default continued such that the Property was noticed for an April 4, 2023 foreclosure sale.[10] Before the sale could take place, Plaintiff paid the *entire* reinstatement amount – including fees, charges, principal, and interest – as detailed by foreclosure counsel's

---

[2] Plaintiff's co-borrower is not a party to this lawsuit.

[3] **Exhibit A-1**.

[4] Jesus Martinez is not a party to this lawsuit but appears to be Plaintiff's former spouse.

[5] **Exhibit A-2**.

[6] **Exhibit A-3**; **Exhibit A-4**.

[7] **Exhibit A-5**; **Exhibit A-6**.

[8] **Exhibit A-7**; **Exhibit A-8**.

[9] **Exhibit A-9**; **Exhibit A-10**.

[10] **Exhibit A-11**.

reinstatement letter.[11] Following her $13,038.48 reinstatement payment in early 2023, Plaintiff defaulted again, with several failed payments due to non-sufficient funds.[12] Plaintiff remained in default, receiving approval for a forbearance in February 2024.[13] Later, in September 2024, when her account was then due and owing for the January 2024 payment, Plaintiff began making promises of reinstatement payments to PNC, claiming she "intend[ed] to use the [tax] refund to pay any amount currently outstanding" under the Loan.[14]

**B. <u>PNC provided Plaintiff with documentation on how to reinstate her loan</u>.**

Exactly as she had done in 2023, Plaintiff requested reinstatement figures and PNC obliged on October 2, 2024.[15] As with the 2023 reinstatement letter – which Plaintiff paid without objection – PNC included all recoverable costs and fees it had incurred as a result of Plaintiff's default.[16] As of the date of the October 2, 2024 letter, the entire reinstatement amount due and owing on or before October 17, 2024 was $19,116.87.[17] Importantly, this amount included past due periodic payments (since January 2024), as defined by Paragraph 2 of the Deed of Trust and Paragraph 3 of the Note, and the additional Loan Charges, as defined by Paragraph 14 of the Deed of Trust, incurred by PNC as a result of Plaintiff's default which Plaintiff was obligated to pay in full under Paragraph 6 of the Note.[18]

---

[11] **Exhibit A-12**; **Exhibit A-13**.

[12] **Exhibit A-14**; **Exhibit A-15**; **Exhibit A-16**; **Exhibit A-17**.

[13] **Exhibit A-18**.

[14] **Exhibit A-19**.

[15] **Exhibit A-20**.

[16] *Id.*; *see also* **Exhibit A-12**.

[17] **Exhibit A-20**.

[18] **Exhibit A-1** at ¶¶ 3, 6; **Exhibit A-2** at ¶¶ 2, 14.

### C. **Instead of reinstating her loan, Plaintiff made partial payments that were less than the reinstatement amount.**

Almost immediately, Plaintiff requested that PNC waive the past due costs and fees it had incurred as a result of Plaintiff's default, claiming she didn't have to pay them.[19] However, because these costs had already been incurred by PNC over the periods in which Plaintiff failed to make payments, her request to waive the fees simply because Plaintiff did not want to pay them was not enough. As with every single other borrower in default, PNC required that *all* fees outstanding be paid to reinstate the Loan. On October 15, 2024 Plaintiff made a payment to PNC in the amount of $16,782.09.[20] This payment was $2,334.78 short of a full reinstatement. Because of the shortage, the funds were initially placed into a Suspense account, and then applied to the past-due balance on the Loan as follows:

- January, February and March 2024 monthly payments in the amount of $1,671.65 each
- April, May, June, July, August and September 2024 monthly payments in the amount of $1,681.02 each
- Late charges in the amount of $129.60
- Property inspection fees in the amount of $80.00
- Corporate advance fees in the amount of $1,471.42

**Total**: $16,782.09[21]

Because Plaintiff unquestionably did not pay the *entire* amount clearly quoted to her, the Loan was due and owing for the October 1, 2024 payment after the application. Plaintiff failed to make any additional payments, until early 2025 when she tried to make partial reinstatement payments on at least two occasions, which were rejected due to the simple fact that the partial

---

[19] **Exhibit A-21**.

[20] **Exhibit A-13** .; **Exhibit A-28**.

[21] **Exhibit A-28**; *see also* **Exhibit A-13**.

payments would not bring the loan current.[22] Plaintiff never remitted a payment sufficient to bring the loan current, despite being sent multiple reinstatement letters.[23]

Due to Plaintiff's default on the Loan and affirmative refusal to pay what was owed, PNC referred the loan to foreclosure on February 12, 2025 (as alleged by Plaintiff in ¶21 of her Amended Complaint) and ultimately noticed the Property for foreclosure.[24] In response, Plaintiff filed this lawsuit and obtained a Temporary Restraining Order – as of the date of this Motion, foreclosure has not been reset and Plaintiff remains in the Property. Plaintiff submitted a credit dispute to Transunion on April 8, 2025, which contained no supporting documentation other than basic dispute codes, and PNC responded on May 2, 2025.[25] Plaintiff also submitted a Notice of Error on April 23, 2025, to which PNC responded on May 22, 2025.[26]

## III. SUMMARY JUDGMENT EVIDENCE

| | | |
|---|---|---|
| **Exhibit A** | - | Declaration of Crystal L. Richardson |
| **Exhibit A-1** | - | Note |
| **Exhibit A-2** | - | Deed of Trust |
| **Exhibit A-3** | - | September 2021 Monthly Statement |
| **Exhibit A-4** | - | October 2021 Monthly Statement |
| **Exhibit A-5** | - | November 4, 2021 Notice of Default |
| **Exhibit A-6** | - | November 3, 2021 Assistance Correspondence |

---

[22] **Exhibit A-22**; **Exhibit A-23**.

[23] **Exhibit A-24**; **Exhibit A-25**.

[24] **Exhibit A-26**.

[25] **Exhibit A** at ¶¶ 37-42; **Exhibit A-29**; **Exhibit A-30.**

[26] **Exhibits A-27;** **Exhibit A-28**.

| | | |
|---|---|---|
| **Exhibit A-7** | - | November 21, 2021 NSF Return |
| **Exhibit A-8** | - | January 2022 Monthly Statement |
| **Exhibit A-9** | - | February 2023 Monthly Statement |
| **Exhibit A-10** | - | March 2023 Monthly Statement |
| **Exhibit A-11** | - | Notice of April 4, 2023 Foreclosure Sale |
| **Exhibit A-12** | - | March 2, 2023 Reinstatement Letter |
| **Exhibit A-13** | - | Reinstatement Application Notes |
| **Exhibit A-14** | - | June 2023 Monthly Statement |
| **Exhibit A-15** | - | August 2023 Notice of Incomplete Payment |
| **Exhibit A-16** | - | September 2023 Monthly Statement |
| **Exhibit A-17** | - | November 2023 NSF return |
| **Exhibit A-18** | - | February 22, 2024 Forbearance Approval |
| **Exhibit A-19** | - | September 9, 2024 Correspondence with Plaintiff |
| **Exhibit A-20** | - | October 2, 2024 Reinstatement Letter |
| **Exhibit A-21** | - | October 9-17, 2024 Correspondence with Plaintiff |
| **Exhibit A-22** | - | March 3, 2025 Return of funds |
| **Exhibit A-23** | - | March 25, 2025 Return of funds |
| **Exhibit A-24** | - | April 1, 2025 Reinstatement Letter |
| **Exhibit A-25** | - | April 25, 2025 Reinstatement Letter |
| **Exhibit A-26** | - | Notice of May 6, 2025 Sale |
| **Exhibit A-27** | - | April 23, 2025 Notice of Error |
| **Exhibit A-28** | | May 22, 2025 Response to Notice of Error |
| **Exhibit A-29** | | May 2, 2025 e-Oscar/ACDV Response |
| **Exhibit A-30** | | MSP System Note dated May 5, 2025 |

| | |
|---|---|
| **Exhibit B** | July 31, 2026 Plaintiff's First Supplemental Initial Disclosures |

## IV. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim as to which there is no genuine issue of material of fact and upon which the moving party is entitled to prevail as a matter of law. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 324-25 (1986). The movant need only show the absence of evidence to support a claim on issues to which the non-movant bears the ultimate burden of proof at trial. *Id.* at 323-25. Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id*. at 324-35. The non-moving party must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## V. ARGUMENT AND AUTHORITIES

### *A. Plaintiff's contract claims are barred due to her prior material breach of the Loan, and PNC's payment application was correct.*

As the Texas Supreme Court made clear in *Dobbins v. Redden*, a party to a contract who is herself in default cannot maintain a suit for its breach. 785 S.W.2d 377, 378 (Tex. 1990); *see also Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004) (reciting fundamental principle of contract law that, once a party materially breaches a contract, the other party is discharged from further performance). This rule was adopted and applied in the mortgage context by the Fifth Circuit Court of Appeals in *Villarreal v. Wells Fargo Bank, NA*., 814 F.3d 763, 767 (5th Cir. 2016). In that case, the Fifth Circuit held that because the borrower pleaded no facts demonstrating she performed under her promissory note and deed of trust (an essential element of

her breach of contract claim), the district court properly granted the lender's motion to dismiss based on the prior material breach doctrine. *Id.*

By her own admission, Plaintiff was in default on her payment obligations.[27] Failing to make timely payments under the Note and Deed of Trust constitutes a breach of the Loan.[28] Moreover, and pursuant to Paragraphs 1, 6, and 8 of the Note and Paragraphs 1, 2, 9, and 14 of the Deed of Trust, Plaintiff was obligated to pay additional charges and fees associated with PNC's preservation of its rights conferred to it under the Loan documents when Plaintiff defaulted.[29] Pursuant to those subsections, Plaintiff was obligated to pay those amounts incurred, in addition to the past due monthly payments, when reinstating the Loan.[30] When offered a reinstatement in 2024, Plaintiff affirmatively chose not to pay the full amount, acknowledging her choice to fail to pay the fees and costs incurred by PNC as a result of the default.[31] By its very definition, then, Plaintiff was in material default of the Note and Deed of Trust on the date of the partial October 2024 payment and thus, pursuant to established Texas Supreme Court and Fifth Circuit case law, Plaintiff cannot maintain a claim for breach of contract against PNC. *See Dobbins*, 785 S.W.2d at 378; *Villarreal*, 814 F.3d at 767. Therefore, Plaintiff's contention that it was PNC who breached the agreement by applying her partial reinstatement to the amounts due and owing constitutes a gross misstatement of the facts at hand, as even the most generous review of the facts demonstrates

---

[27] *See* **Exhibit A-14**; **Exhibit A-15**; **Exhibit A-16**; **Exhibit A-17** ; **Exhibit A-19**.

[28] **Exhibit A-1** at ¶¶ 1, 6, 8; **Exhibit A-2** at ¶¶ 1, 2, 9, 14.

[29] *Id.*

[30] *Id.*

[31] *Id*; **Exhibit A-13**; **Exhibit A-21**.

a default by Plaintiff in June 2023 – if not earlier.[32] As such, Plaintiffs meritless contract claim must be dismissed.

Further, PNC's payment application complied in all respects with the terms of the Note and Deed of Trust. Section 2 of the Deed of Trust provides a payment priority that governs the application of payments received when the loan was delinquent, providing that if PNC received a payment "for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and late charge."[33] And if more than one such payment was outstanding, PNC could "apply any payment received from [Plaintiff] to the repayment of the Periodic payment if, and to the extent that, each payment can be paid in full."[34] As set out previously, PNC's payment application followed this contractually mandated waterfall – applying the funds received by Plaintiff to the nine past-due periodic payments and associated late charges and fees incurred as a result. Once those were exhausted, no funds remained to satisfy the October 2024 payment.[35] PNC's reinstatement never demanded $16,782.09 – the amount Plaintiff paid. It demanded $19,116.87. Plaintiff did not pay that amount, and PNC therefore did not breach any contract with Plaintiff.

***B. PNC is not a "debt collector" as defined by the FDCPA.***

A "debt collector," as defined by the FDCPA, is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6) (2010). Conversely, a "creditor"

---

[32] **Exhibit A-14**; **Exhibit A-1**

[33] **Exhibit A-2**, at ¶ 2.

[34] *Id.*

[35] **Exhibit A-28**.

is "any person…to whom a debt is owed . . ." *Id.* at (4). When a creditor collects its debt for its own account, it is not generally acting as a debt collector. *Dixon v. Mazda Fin. Servs., Inc.*, No. 4:21-cv-03716, 2022 WL 2479908, at *2 (S.D. Tex. July 6, 2022) (quoting *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135-36 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718 (2017)). Thus, the material distinction between a debt collector and a creditor under the FDCPA is whether the collection activity is for itself (a creditor) or for others (a debt collector). *Id.* "Courts have repeatedly found that banks and financial institutions attempting to collect their own debts are not debt collectors under the FDCPA." *James v. Ally Bank*, No. 4:21-CV-00925, 2023 WL 1093891, at *3 (E.D. Tex. Jan. 3, 2023) (citations omitted); *see also Berman v. Wells Fargo Bank, N.A.*, No. 6:12-cv-405, 2013 WL 145501, at *3 (M.D. Fla. Jan. 14, 2013) (quoting *Goia v. CitiFinancial Auto*, No. 12-12639, 2012 WL 6013206, at *6 (11th Cir. Dec. 3, 2012)) ("Where a financial company is 'engaged in the collection of its own debts, as opposed to the debts of another,' it does 'not qualify as a debt collector under the FDCPA.'"). Here, PNC – a bank – has come to be the owner of the debt it seeks to collect from Plaintiff and is therefore not a "debt collector" as defined by the FDCPA.

***C. Plaintiff's DTPA claim fails because she is not a "consumer" under the statute.***

The law in Texas is remarkably clear: Plaintiff's DTPA claim is barred because Plaintiff is not a "consumer" as defined by the statute. TEX. BUS. & COM. CODE § 17.50(a) (West 2008). A consumer is one who seeks or acquires goods or services by purchase or lease. *Id.* at § 17.45(4) (West 2007). Whether Plaintiff qualifies as a "consumer" is a question of law for the Court to decide. *Hansberger v. EMC Mortg. Corp.*, No. 04-08-00438-CV, 2009 WL 2264996, at *2 (Tex. App.—San Antonio July 29, 2009, pet. denied). Generally, "a pure loan transaction lies outside the DTPA because money is considered to be neither a good nor a service." *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 (Tex. 1980); *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 166

(Tex. App.—Austin 1996, no writ). Though a lender may perform services incidental to the loan, they are not independent of the objectives of the loan transaction. *Hansberger*, 2009 WL 2264996, at *2. The Fifth Circuit confirmed that when the basis of a borrower's claim is not the goods or services acquired in the original transaction (i.e. Plaintiff's *home* in and of itself), but rather the subsequent loan servicing and foreclosure activities, the borrower is not a consumer. *Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 279 (5th Cir. 2014). Plaintiff's attempts to argue to the contrary are devoid of any legal support.

Here, Plaintiff's DTPA claim arises from the servicing of her mortgage and the handling of Plaintiff's partial reinstatement payments – i.e. from the *financing* of the Loan used by Plaintiff to acquire the Property.[36] Because PNC's actions in this regard were merely incidental to the loan transaction itself, and because money is definitively not a good or a service, Plaintiff is not a "consumer" as defined by the DTPA. Therefore, Plaintiff cannot bring a cause of action under the statute. *See* TEX. BUS. & COM. CODE § 17.45(4) (West 2007); *Riverside Nat'l Bank*, 603 S.W.2d at 174; *Maginn*, 919 S.W.2d at 166; *Reule v. M&T Mortg.*, No. 14-13-00502-CV, 2015 WL 6560611, at *8 (Tex. App.—Houston [14th Dist.] Oct. 29, 2015, pet. denied). As such, Plaintiff's DTPA claim should be dismissed with prejudice.

***D. PNC complied with RESPA, and Plaintiff cannot show any damages to sustain a claim under RESPA.***

Section 2605 of RESPA, and its implementing regulation, Regulation X, 12 C.F.R. Part 1024, provides that if a loan servicer receives a notice of error from the borrower relating to the servicing of such loan, the servicer must conduct a reasonable investigation and provide a written response (or take corrective action) within 30 days of receiving the notice. *Id.* § 2605(e)(1)(B); 12

[36] Amended Complaint (Doc. 26), at ¶¶ 53-58.

C.F.R. §1024.35(e)(1)(i). A plaintiff must allege actual damages resulting from a violation of § 2605. *Id.* § 2605(f)(1)(A); *see also Caballero v. Wells Fargo Bank, N.A.*, 2011 WL 6039953, at *2 (N.D. Tex. July 25, 2011).

Plaintiff submitted a Notice of Error under RESPA on April 23, 2025.[37] The "errors" she believes existed stemmed exclusively from the fees and costs incurred with her chronic delinquency on the loan, in addition to the natural consequences of that delinquency – foreclosure.[38] On May 22, 2025, PNC responded to Plaintiff's Notice of Error, detailing the application of fees on the delinquent Loan, Plaintiff's partial payment, and how the funds were applied to the Loan in October 2024, ultimately concluding that PNC's investigation showed that no error occurred.[39] PNC understands that Plaintiff now disagrees with this position, but the Note and Deed of Trust clearly provide otherwise (and, at some point, Plaintiff understood this as well).[40] Substantively, and as discussed above, the Note and Deed of Trust unquestionably allow PNC to incur and recover fees associated with Plaintiff's default on the Loan.[41] Moreover, and despite Plaintiff's assertion to the contrary, PNC's investigation and response to her Notice of Error was compliant with RESPA.[42] That response detailed Plaintiff's default history, partial reinstatement payment, and how the funds were applied leading to her prompt return to default in

---

[37] Amended Complaint (Doc. 26), at ¶ 32.

[38] Amended Complaint (Doc. 26), at ¶¶ 60-62.

[39] **Exhibit A-28**.

[40] **Exhibit A-21**.

[41] **Exhibit A-1** at ¶¶ 1, 6, 8; **Exhibit A-2** at ¶¶ 1, 2, 9, 14.

[42] *See* **Exhibit A-28**.

2024, and was submitted to Plaintiff within the thirty-day threshold codified by RESPA and its corresponding Regulation X.[43] Thus, it complied with RESPA and Regulation X.

In addition to the above, Plaintiff cannot demonstrate that she has suffered actual damages from this alleged violation of RESPA (which PNC denies), barring any claim under § 2605(e) of RESPA. *See Hurd v. BAC Home Loans Servicing, LP*, 880 F.Supp. 747, 768 (N.D. Tex. 2012) (citing *Akintunji v. Chase Home Fin., L.L.C.*, 2011 WL 2470709, at *2–3 (S.D. Tex. Jun. 20, 2011) (dismissing RESPA claim where plaintiff failed to allege actual damages)). The law is clear: to recover damages under RESPA, a borrower must present "specific evidence to establish a causal link between the financing institution's violation and their injuries." *McLean v. GMAC Mortg. Corp.*, 398 F. App'x. 467, 471 (11th Cir. 2010). Further, under 12 U.S.C. § 2605, a plaintiff must show either: (1) that actual damages resulted from the RESPA violation; or (2) that the defendant engaged in "a pattern or practice of noncompliance" entitling the borrower to up to $2,000 in statutory damages. 12 U.S.C. § 2605(f)(1)(A)-(B); *Oden v. JPMorgan Chase Bank, N.A.*, 2012 WL 1610782, at *2 (S.D. Tex. May 8, 2012); *Gipson v. Deutsche Bank National Trust Company*, 2015 WL 11120538, at *24 (N.D. Tex. Oct. 27, 2015). Without proper allegations of the injury and damages resulting from the alleged RESPA violation, the claim will fail. *Frazile v. EMC Mortg. Corp.*, 382 F.App'x 833, 836 (11th Cir. 2010) (finding plaintiff's failure to allege facts relevant to the necessary element of damages supported dismissal for failure to state a claim under § 2605).

Given Plaintiff's admitted default under the terms of the Note and the Deed of Trust, she cannot sufficiently demonstrate as a matter of law she has suffered any damages caused by PNC's alleged violation of RESPA. *See Ellis v. Wells Fargo Bank, N.A.*, No. G-13-249, 2014 WL

[43] *Id.*

12596473, at *5 n.6 (S.D. Tex. Feb. 10, 2017) (collecting cases which state that, when a plaintiff is already in default before the purported RESPA violation arose, there are no damages associated with the RESPA claim). In her supplemental disclosures served on July 31, 2026 Plaintiff fails to delineate any specific damages applicable to her specific RESPA claim.[44] Clearly, damages arising from other causes of action (such as an alleged breach of contract due to the alleged improper payment application) would be different from any purported damages Plaintiff may have suffered as a result of the alleged RESPA violation. Plaintiff has presented no such evidence of actual damages and certainly has no evidence that PNC engaged in a pattern of noncompliance entitling Plaintiff to statutory damages under RESPA. Further, it is undisputed that a foreclosure did not occur and that Plaintiff remains in the Property.[45] Moreover, Plaintiff's failure to acknowledge the relevant subsections of the Note and Deed of Trust governing fees, default, costs, and the like further negates her RESPA claims, as PNC is very clearly entitled to pass-through costs associated with a habitually delinquent borrower like Plaintiff.

Notably, Plaintiff's allegations in paragraph 61(a) and (b) of her Amended Complaint (alleged failures under RESPA to properly credit payments (12 C.F.R. §1024.35(b)(2)) and for alleged improper imposition of fees (12 C.F.R. §1024.35(b)(6)) do not confer a private right of action under RESPA – those are simply categories of "covered errors" that a borrower may assert a servicer look into. Further, Plaintiff's allegation of premature foreclosure referral (Paragraph 61(e) – based on 12 C.F.R. §1024.41(f)(1)) is simply inaccurate. Plaintiff's loan was due for the October 1, 2024 payment when PNC referred the loan to foreclosure on February 12, 2025. As

---

[44] *See* **<u>Exhibit B</u>**.

[45] *See* Temporary Restraining Order (Doc 1-1).

such, the loan was referred to foreclosure more than 120 days after the loan was delinquent, and this RESPA claim fails as well.

***E. Plaintiff's FCRA claim should be dismissed as Plaintiff's loan was properly reported as "delinquent" to the relevant consumer reporting agencies and PNC's investigation was reasonable.***

Plaintiff's claim under the FCRA is premised on the allegation that following her dispute of her credit reporting by PNC with Transunion on April 8, 2025, PNC failed to conduct a reasonable investigation of her dispute. Under 15 U.S.C. §1681s-2(b), PNC's only liability would rest on a finding that its investigation was not reasonable.

The undisputed facts show that Plaintiff has consistently been in default on the Note since 2021, save and except for her 2023 reinstatement. The evidence also shows that, after she paid the full reinstatement in 2023 (including all Corporate Advance fees, which she now claims are *not* recoverable), Plaintiff immediately fell into default once again. Any attempt by Plaintiff to argue that any negative furnishing on the loan following her revived default in 2023 is simply without merit – she clearly was in default and did not make a full reinstatement. And failing to reinstate or make payments following that clearly would result in negative – but accurate – credit reporting by PNC. Moreover, Plaintiff acknowledged in October 2024 that she was not remitting a complete reinstatement, asking PNC to "reconsider" its recoverable fees to "work with" Plaintiff to reinstate the Loan via the partial reinstatement payment.[46] Given that Plaintiff admittedly did not remit a complete payment to reinstate the Loan and that, to this date, Plaintiff still has not brought the Loan current, Plaintiff is delinquent on her Loan and PNC's furnishing is accurate.

---

[46] **Exhibit A-21**.

Upon receiving Plaintiff's dispute on April 8, 2025, PNC investigated the disputed information.[47] It is important to note that PNC was provided only limited information from Transunion with the ACDV.[48] After review, PNC confirmed the account remained delinquent but did in fact update certain account data fields in its May 2, 2025 response to Transunion to ensure that its response was as precise and up-to-date as possible.[49] This review by PNC was reasonable, which is all that is required under the FCRA.

Further, even if Plaintiff could somehow show that PNC did not conduct a "reasonable" investigation (which she cannot), she still cannot show damages or causation as she cannot show that PNC's credit reporting was inaccurate. *See Gorman v. Pennymac Loan Services, LLC,* SA:22-CV-1071-FB (HJB), 2025 WL 2618568 at *4 (W.D. Tex. September 3, 2025) ("To prevail on a §1681s-2(b) claim, Plaintiff must demonstrate actual inaccuracies in the furnished information that a reasonable investigation could have discovered.") (quoting *Hall v. LVNV Funding, LLC*, 2017 WL 6403049 at *3 (E.D. Tex. Aug. 11, 2017), *report and recommendation adopted*, 2017 WL 6403048 (E.D. Tex. Sep. 11, 2017), *aff'd*, 738 F. App'x 335 (5th Cir. 2018)). "Absent a genuine dispute as to the accuracy of the furnished information, 'a plaintiff's claim against a furnisher necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation.'" *Id.* (citing *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018)); *see also Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1548 (2016); *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166 (9th Cir. 2018) ("Consequently, although [plaintiff] made a plausible

---

47 **Exhibit A-29**; **Exhibit A-30**; and **Exhibit A**at ¶ 39-42.

48 **Exhibit A-29**; **Exhibit A-30**; and **Exhibit A** at ¶ 39.

49 *See* **Exhibit A-29**.

showing of [defendant's] procedural violation of FCRA, he failed to establish facts showing he suffered actual harm or a material risk of harm.").

### *F. Plaintiff cannot recover under the TDCA, Tex. Fin. Code § 392.304(a)(8)*

A plaintiff must plead claims for violations of the Texas Debt Collection Practices Act ("TDCA") with sufficient specificity. *See Bagley v. PennyMac Corp.*, No. 3:16-CV-0420-N (BF), 2016 WL 7190758, at *5 (N.D. Tex. Oct. 19, 2016), *adopted* No. 3:16-CV-00420-N (BF), 2016 WL 7178999 (N.D. Tex. Dec. 9, 2016); *Gipson v. Deutsche Bank Nat. Tr. Co.*, No. 3:13-CV-4820-L, 2015 WL 2069583, at *7 (N.D. Tex. May 4, 2015); *Llanes v. U.S. Bank, Nat'l Ass'n*, No. 3:13-CV-2243-M-BN, 2014 WL 97362, at *4 (N.D. Tex. Jan. 8, 2014); *Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 (N.D. Tex. Aug. 29, 2012). Plaintiff's TDCA claim is premised on an allegation that PNC improperly labeled attorneys' fees incurred by PNC as a result of her default as "corporate advances" and by claiming amounts were owed that were disputed or not properly due. Further she alleges PNC used "unfair or unconscionable means" to collect a debt, including proceeding with foreclosure despite "valid payment attempts and disputed fees."[50] This is, by itself, sufficient to warrant dismissal, as "Corporate Advance" fees are a term of art used for referring to costs incurred by a lender in preserving its interest in the Property; namely, attorneys' fees, property inspection fees, foreclosure expenses, and the like – all of which are recoverable under the Note and Deed of Trust.[51]

Moreover, Plaintiff's claims fail because foreclosure is not an action prohibited by law. The Fifth Circuit has held that, irrespective of any statutory notice requirements, a lender does not violate the TDCA by threatening to foreclose if it retains its contractual right to foreclose and the

[50] *See* Amended Complaint (Doc. 26), at ¶¶ 76-79.

[51] **Exhibit A-1** at ¶¶ 1, 6, 8; **Exhibit A-2** at ¶¶ 1, 2, 9, 14.

mortgage was in default. *Rucker v. Bank of Am., NA*, 806 F.3d 828, 831 (5th Cir. 2015); *Richardson v. Wells Fargo Bank, NA*, 873 F. Supp. 2d 800, 815 (N.D. Tex. 2012); *Adams v. US Bank, NA*, No. 3:17-cv-723, 2018 WL 2164520, at *7 (N.D. Tex. Apr. 18, 2018). The Court further clarified that this section of the TDCA does not apply to non-judicial foreclosure. *McCaig v. Wells Fargo Bank (Tex.), NA*, 788 F.3d 463, 477 (5th Cir. 2015).

Further, to maintain an action under the TDCA, a plaintiff must plead actual damages; when no foreclosure has occurred, a plaintiff sustains no damages under the TDCA. *Adams*, 2018 WL 2164520, at *8 (dismissing borrower's TDCA claim because "no foreclosure has occurred, and neither Ms. Adams's lost income from time spent in prior litigation nor her court costs in bringing this action qualify as actual damages."). Therefore, and because Plaintiff's claims stem exclusively from PNC's attempt to foreclose on the Property due to her delinquent loan, those claims fail because non-judicial foreclosure does not fall within the purview of the TDCA and because foreclosure is not an action prohibited by law. *Id.*; *McCaig*, 788 F.3d at 477.

Discussions regarding a loan modification or postponement of foreclosure do not constitute "debt collection" under the TDCA. *Higginbotham v. Indymac Bank*, No. 4:17-CV-00229, 2017 WL 2701939, at *5 (E.D. Tex. June 1, 2017), *report and recommendation adopted*, No. 4:17-CV-00229, 2017 WL 2691241 (E.D. Tex. June 22, 2017) (citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 7823 (5th Cir. 2013) (statements regarding loan modification applications and the postponement of foreclosure do not concern the "character, extent, or amount of" the home loan and are not covered by Section 392.304(a)(8) because plaintiffs were aware they had a mortgage debt and the amount owed, and defaulted.). Generally, communications concerning renegotiation of a loan relate to its modification, not the collection of the debt. *Strong v. Green Tree Servicing, LLC*, 716 Fed. Appx. 259, 264 (5th Cir. 2017) (citing *Fields v. JP Morgan Chase Bank, N.A.*, 638 F.Appx. 310, 314 (5th Cir. 2016). Here, because Plaintiff's claims focus almost

exclusively on Plaintiff's attempted renegotiation of her partial reinstatement post default, her TDCA claims fail as a matter of law.[52] Plaintiff admits she was in default on the terms of the loan; therefore, PNC was well within its right to pursue foreclosure.[53] Further, Plaintiff cannot not allege she sustained any damages as a result of PNC's alleged TDCA violations, nor could she, as foreclosure has not occurred, and she is still in possession of the Property.

***G. Plaintiff is not entitled to declaratory or injunctive relief.***

Plaintiff seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 ("DJA"), asking for the court to "issue a permanent injunction" barring PNC from exercising its rights under the Note and Deed of Trust.[54] However, the DJA "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted). It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.* Here, given Plaintiff's failure to state a viable claim for relief against PNC, or show that a genuine controversy exists between the parties, Plaintiff's declaratory judgment claims cannot continue. *Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she

[52] *See generally* Amended Complaint (Doc. 26).

[53] *Id.*

[54] Amended Complaint (Doc. 26), at ¶¶ 80-84. Moreover, and in order to enjoin PNC from foreclosing, Plaintiff must first tender the full sum of the admitted debt. *Stewart Beach Condominium Homeowners Ass'n, Inc. v. Gili N Prop Invests., LLC*, 481 S.W.3d 336, 349 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Austin v. Mitchell*, No. 05-18-00052-CV, 2018 WL 2949443, at *4 (Tex. App.—Dallas June 13, 2018, no pet.); *see also BAPA Brooklyn 2004, LLC v. Michael A. & Maria D. Twiehaus Revocable Living Tr.*, No. 05-21-00180-CV, 2022 WL 2526975, at *2 (Tex. App.—Dallas July 7, 2022, no pet.).

alleged no facts leading to the conclusion that a present controversy existed between plaintiff and the defendant); *see also Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, at *56 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), aff'd, 514 F. App'x 513 (5th Cir. 2013) (declining to entertain the plaintiff's request for declaratory judgment where he did not factually plead a plausible substantive claim). As such, Plaintiff's claims under the DJA must be dismissed.

## VI. CONCLUSION

Defendant PNC Bank, National Association respectfully requests this Court GRANT this Motion for Summary Judgment, DISMISS WITH PREJUDICE the claims asserted by Plaintiff Aura Valdez-Payan, and grant such other relief to which PNC may be justly entitled.

Respectfully submitted,

Bradley

By: */s/ Gabriella Alonso*

**JON H. PATTERSON**
Texas Bar No. 24077588
jpatterson@bradley.com
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
Telephone: (205) 521-8403
Fax: (205) 488-6403

**GABRIELLA E. ALONSO**
Texas Bar No. 24113527
galonso@bradley.com
1445 Ross Ave., Suite 3600
Dallas, Texas 75202
(214) 257-9800 Telephone
(214) 939-8787 Telecopier
***ATTORNEYS FOR DEFENDANT PNC BANK, N.A.***

**CERTIFICATE OF SERVICE**

I certify that on this 14 day of August 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that a true and correct copy of the foregoing has been served on all counsel of record as follows:

**Via U.S. Mail and E-Mail:**

*auravaldezp@gmail.com*
Aura Valdez-Payan
2009 Rinker Ranch Drive
Austin, TX 78725
*Plaintiff pro se*

*/s/ Gabriella Alonso*
Gabriella E. Alonso